# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| ERRON JANZEN, | |
| *Plaintiff,* | |
| vs. | Case No. 21-cv-1107-EFM |
| PORTFOLIO RECOVERY ASSOCIATES, L.L.C., | |
| *Defendant.* | |

## MEMORANDUM AND ORDER

Plaintiff Erron Janzen, a 64-year-old woman with a seizure disorder, was employed part-time as an account executive and account representative for Defendant Portfolio Recovery Associates. On August 10, 2020, Plaintiff was fired, reportedly because she said "oh shit" while on an open line with a customer. Plaintiff believes this is not the true reason for her termination, and that instead she was the victim of invidious discrimination and retaliation based on her age and disability, in violation of the ADEA[1] and ADA.[2] Defendant now moves for summary

---

[1] 29 U.S.C. § 621 *et seq.*

[2] 42 U.S.C. § 12101 *et seq.*

judgment on all of Plaintiff's claims against it.  Because Plaintiff fails to make out a prima facie case as to any of her claims, the Court must grant Defendant's Motion (Doc. 25).

## I.    Factual and Procedural Background[3]

Defendant is a purchaser and collector of charged-off credit card debt.  Part of this business involves the communication, by Defendant's employees, with "customers" (debtors).  In general, Defendant's role makes it—and particularly, these communications—subject to the Fair Debt Collection Practices Act ("FDCPA"),[4] along with other state and federal laws and regulations.

Defendant has promulgated several internal policies to ensure its employees comply with these laws and regulations.  Its policy on the FDCPA contains a section entitled "Harassment or Abuse," which prohibits "[t]he use of obscene or profane language or language abusing the [customer]."  The Operations Employee and Management Policy echoes this using identical language.  Likewise, Defendant's Call Handling Process policy states that "[u]nder no circumstances may you use profanity."  Violations of these policies may "result in coaching, discipline, or termination; depending on the nature and frequency of the violation."

Plaintiff was hired by Defendant as a part-time account representative on August 21, 2017. Plaintiff was part of the Hutchinson, Kansas team.  Her duties included working with customers to collect outstanding debts, which involved phone contact with these persons.  Plaintiff had several managers during her time working for Defendant.  In 2020, her manager was Melissa Hartle.

---

[3] In accordance with summary judgment procedures, the Court has laid out the uncontroverted material facts in the light most favorable to the non-moving party, the Plaintiff.

[4] 15 U.S.C. §§ 1692–1692p.

Plaintiff reports that she is one of the oldest members of her team.  Hartle was 41 when Plaintiff was fired.  Most other members of the team were in their twenties or thirties at the time.

Beginning in 1998, Plaintiff began receiving social security disability benefits on account of her seizure disorder.  This disorder causes Plaintiff to experience memory problems and about 15 seizures a month, approximately two of which may occur at work.  Plaintiff states that if she was sitting down, the seizure would not be noticeable by others.

There is a dispute as to whether Plaintiff informed anyone about her alleged disability.  She states that she "told them the day [she] was hired that [she] was on Disability" and that she spoke with Hartle "all the time" about her memory problem.  Plaintiff admits she never told Hartle *why* she had a memory problem and that she never mentioned her seizure disorder.  Hartle and Luke Faidly, the Assistant Vice President of Defendant, both aver that Plaintiff never told them about either her seizure disorder or her memory problems.

During her time with Defendant, Plaintiff made several requests regarding her workspace. She asked for a certain type of chair due to back problems, which was denied.  She notes that she was told to "deal with it."  Plaintiff also requested the ability to write things down to assist with her memory issues, but this too was denied as she was told no pens or pencils were allowed. Plaintiff never made any formal accommodation requests related to either of these.

On May 4, 2020, Plaintiff informed Faidley that she felt Hartle had made several inappropriate comments about her age.  Hartle reportedly said "I'm sure it was due to your age" as she pointed out that Plaintiff could not wrap up an account as fast as her younger co-workers, and that Plaintiff's age was a factor in inability to keep multiple accounts open at one time. Defendant disputes this, stating that Hartle merely parroted Plaintiff's own statements back to her after Plaintiff commented that her age kept her from performing well or utilizing technology

effectively.  Regardless, it is undisputed that Faidley later addressed Plaintiff's concern with Hartle and informed her that comments regarding an employee's age are inappropriate.  Plaintiff, for her part, made it clear she had no problem working with Hartle as long as her age was not brought up again.

Plaintiff felt that, after her complaint, "the situation did not improve" and Hartle continued to treat her in a discriminatory manner.  She states she could not ask Hartle a simple question without Hartle saying she "thought [they] were butting heads," and that Hartle "sent out nasty notes about [Plaintiff] for everyone to see making false accusation that were not true."  Plaintiff omits any further details as to these allegations.

Despite Plaintiff's concern of a worsening situation between her and Hartle following her complaint, she received a promotion soon thereafter.   Hartle offered—and Plaintiff accepted—a promotion to the position of account executive.  This was the first promotion Plaintiff had received in approximately three years at Portfolio Recovery Associates.

On August 5, 2020, Plaintiff was being trained on a new system implemented to handle calls.  She felt the system made it difficult to tell whether a call was on hold.  Hartle was training Plaintiff on the system and was standing by her as she took calls from customers.  On one call, Plaintiff can be heard placing the customer on a brief hold.  The hold music begins to play, but then abruptly cuts out.  Plaintiff is then heard saying "oh shit."  The call resumed several moments later and was ultimately completed without further incident.  Hartle, though she was standing next to Plaintiff, did not immediately know whether Plaintiff was on hold when she used profanity.  Had the call been on hold, the customer could not have heard the profanity.  Hartle returned to her desk to listen to the call recording.  She concluded that the call was not on hold and the customer could have heard Plaintiff use profanity.

Plaintiff was placed on administrative leave while the incident was investigated.   On August 10, 2020, Plaintiff's employment at Portfolio Recovery Associates was terminated.  Her corrective action form stated that "[d]ue to the egregious violation of PRA's policy regarding the use of profanity on an open line we have no choice but to move forward with immediate termination."

Plaintiff reports that at least one other employee of Defendant, a man named Bryce, used profanity but was not terminated.  Plaintiff, however, admits that she does not know what word or words Bryce used, whether he was on an open line, whether a customer was on the line, and whether the call was on mute.

Because of her termination, Plaintiff sued Defendant for disability discrimination in violation of the ADA, as well as for age discrimination and retaliation in violation of the ADEA. Defendant now moves for summary judgment, primarily on the basis that Plaintiff cannot make out a prima facie case as to any of her claims.

## II.      Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law.[5]   A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[6]  The movant bears the initial burden of proof, though "a movant that will not bear the burden of persuasion at trial

---

[5] Fed. R. Civ. P. 56(a).

[6] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (quoting *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

need not negate the nonmovant's claim."[7]  "Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[8]  The nonmovant must then bring forth "specific facts showing a genuine issue for trial."[9]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[10]  The Court views all evidence and draws "reasonable inferences therefrom in the light most favorable to the nonmoving party."[11]

### III.    Analysis

At the summary judgment stage, each of Plaintiff's three claims are governed by the *McDonnell Douglas* standard.[12]  *McDonnell Douglas* and its progeny articulate a three-part burden shifting test.  Initially, the plaintiff bears the burden of establishing a prima facie case as to her claims.[13] If the plaintiff meets this burden, the defendant must come forward with a legitimate, non-discriminatory (or non-retaliatory, as the case may be) reason for the adverse action.[14]  If the defendant does so, "the plaintiff must then have an opportunity to prove by a preponderance of the

---

[7] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[8] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp.*, 477 U.S. at 325).

[9] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (quoting *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999)).

[10] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670-71).

[11] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (quoting *N. Tex. Prod. Credit Ass'n v. McCurtain Cnty. Nat'l Bank*, 222 F.3d 800, 806 (10th Cir. 2000)).

[12] *See Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 896 (10th Cir. 2017) (ADA claims); *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010) (ADEA claims).

[13] *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[14] *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802).

evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."[15]

## A.     Disability Discrimination under the ADA

A prima facie case of discrimination under the ADA requires the plaintiff to establish "(1) that he is disabled within the meaning of the ADA; (2) that he is qualified for the job held or desired; and (3) that he was discriminated against because of his disability."[16]  Defendant primarily attacks Plaintiff's showing on the first and third elements.

### 1.     Disabled Within the Meaning of the ADA

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[17]

Plaintiff contends she meets the first part of this definition because she has been receiving social security disability benefits since 1998 on account of her seizure disorder, which affects her memory and causes her to have approximately 15 seizures per month.  There are several problems, however, with this somewhat limited presentation.  First, Plaintiff provides no support for the proposition that her receipt of social security disability benefits mandates a finding that she is disabled under the ADA.  Second, Plaintiff fails to properly frame the standard under the ADA, which she seems to believe only requires proof that she has a "physical or mental impairment that limits one or more life activities."  Plaintiff is missing a few key qualifiers—the impairment must

---

[15] *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

[16] *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018) (internal quotation marks and citation omitted).

[17] 42 U.S.C. § 12102(1).

"*substantially* limit one or more *major* life activities."[18]  Plaintiff fails to address how her seizure disorder meets this standard, and thus the Court cannot find that Plaintiff meets this first part of the ADA definition of disability.

Plaintiff makes a similar misstep in arguing that she meets the second part of the ADA definition of disability— "a record of such an impairment."  Plaintiff again omits a key portion of the statute, ultimately stating that the definition is satisfied if an individual has a "record of impairment," which she believes she does because of her receipt of social security disability benefits for over twenty years.  But the statutory language is "a record of *such an* impairment," which calls back to the earlier section requiring proof of "a physical or mental impairment that substantially limits one or more major life activities."  Thus, "[t]o have a record of such an impairment, a plaintiff must have a history of, or been misclassified as having, an impairment that substantially limited a major life activity."[19]  Plaintiff, by her omission, again fails to contend with the qualifiers "substantially" and "major," and therefore fails to establish that she has a record of such an impairment.

Fortunately for Plaintiff, the third avenue permitting a finding of disability under the ADA— "being regarded as having such an impairment" —does not require a showing that the impairment "limits or is perceived to limit a major life activity."[20]  Rather, to be "regarded as having such an impairment," Plaintiff must show that "(1) [s]he has an actual or perceived impairment, (2) that impairment is neither transitory nor minor, and (3) the employer was aware

---

[18] *Id.* (emphasis added).

[19] *Sorensen v. Univ. of Utah Hosp.*, 194 F.3d 1084, 1087 (10th Cir. 1999).

[20] 42 U.S.C. § 12102(3)(A); *see also Adair v. City of Muskogee*, 823 F.3d 1297, 1305-06 (10th Cir. 2016) ("Unlike an impairment as defined in subsections (A) or (B), an impairment under § 12102(1)(C) need not limit or even be perceived as limiting a major life activity . . . .").

of and therefore perceived the impairment at the time of the alleged discriminatory action."[21]
Defendant concedes, for the purposes of summary judgment, that Plaintiff's seizure disorder
constitutes an impairment.  And the Court finds that her impairment is neither transitory nor minor,
as it has lasted well over two decades and causes Plaintiff to experience approximately 15 seizures
every month, along with memory problems.  The only question remaining then, is whether
Defendant was aware of Plaintiff's impairment at the time of her termination.

There is a genuine dispute as to this question.  Both Hartle and Faidly aver that Plaintiff
never told them about her seizure disorder or memory problems, but Plaintiff testified that she
"told them the day [she] was hired that [she] was on Disability."  She further testified that she and
Hartle discussed her memory problem "all the time," though they never discussed her seizure
disorder by name.  Based on this, a reasonable jury could find that Defendant was aware of
Plaintiff's impairment at the time of her termination.  Plaintiff has thus satisfied this element of
her prima facie case of disability discrimination.

### 2.    Discrimination Because of Disability

To meet the final prong of a prima facie case of disability discrimination, the plaintiff must
"present some affirmative evidence that disability was a determining factor in the employer's
decision."[22]  This inquiry "focuses on whether the circumstances surrounding the adverse
employment action give rise to an inference that the action was based on the plaintiff's
disability."[23]  Plaintiff may establish this inference by evidence of "(1) actions or remarks made

---

[21] *Adair*, 823 F.3d at 1306.

[22] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citation omitted).

[23] *Lincoln*, 900 F.3d at 1192-93 (cleaned up) (quoting *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 544 (10th Cir. 2014)).

by decisionmakers that could be viewed as reflecting a discriminatory animus, (2) preferential treatment given to employees outside the protected class, (3) a pattern of recommending the plaintiff for positions for which she is not qualified or over-qualified, and (4) a failure to surface plaintiff's name for positions for which she is well-qualified.[24]  The burden to do so is "not onerous," but nor is it "empty or perfunctory."[25]

Though her burden is light, Plaintiff fails to come forward with any affirmative evidence that her disability was a "determining factor" in Defendant's decision to fire her.  Plaintiff points to Hartle's disparaging comments to her as evidence of discriminatory animus.  But Plaintiff's own testimony establishes that these comments, even if made exactly as Plaintiff alleges they were, disparaged Plaintiff because of her *age*, not her disability.  Plaintiff testified:

> [Hartle] brought up my age twice to me, pointing out that I wasn't able to wrap an account up fast like the younger ones could and she said, "I'm sure it was due to your age" and then she said some of the other people have several accounts up at one time and I always just had one account up at one time and she said that was because of my age because I couldn't remember – I couldn't have several accounts up that I had to make comments on and go back and remember what that conversation was on the phone with those people that I talked to with those accounts.

Plaintiff notes that her purported inability to have several accounts open at one time was also due to her memory problems, which are a symptom of her seizure disorder.  But again, by Plaintiff's own testimony, Hartle's alleged comment about that topic zeroed in on Plaintiff's age as the problem, not her disability.

Plaintiff also highlights her two denied "accommodation requests" as evidence of Defendant's discriminatory animus.  Plaintiff requested a particular chair to help with back

---

[24] *Id.* (cleaned up) (quoting *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005)).

[25] *Morgan*, 108 F.3d at 1323 (citations omitted).

problems, as well as the ability to write things down to help with her memory.  Neither was made as a formal accommodation request, and both were denied.  As far as the Court can tell, Plaintiff's request for a special chair has nothing to do with her seizure disorder.  And while Plaintiff's request for permission to have pens or pencils at her workspace to write things down is related to her memory problems and therefore her seizure disorder, she makes absolutely no effort to tie the denial of this request to her eventual termination.

As discussed above, the inquiry on this element of the prima facie case "focuses on whether circumstances *surrounding the adverse employment* action give rise to an inference that the action was based on the plaintiff's disability."[26]  Plaintiff must "present some affirmative evidence that disability was a determining factor in the employer's decision."[27]  Plaintiff presents no evidence, for instance, that the denial was close in time to her termination or that Hartle was even the one who denied the request.  Rather, she relies on the bare assertion that "[i]t is logical to conclude that Ms. Hartle was annoyed with Erron's confusion and need for assistance, resulting in her desire to replace her."  The Court does not find that this is a reasonable inference based on the slim evidence presented.   Plaintiff has failed to make out a prima facie case of disability discrimination under the ADA.  Therefore, summary judgment is appropriate on this claim.

**B.     Age Discrimination under the ADEA**

In termination cases such as this, the prima facie case typically requires proof that Plaintiff was "(1) within the protected class of individuals 40 or older; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person, although not necessarily

---

[26] *Lincoln*, 900 F.3d at 1192-93 (cleaned up) (emphasis added)  (quoting *Smothers*, 740 F.3d at 544).

[27] *Morgan*, 108 F.3d at 1323 (citation omitted).

one less than 40 years of age."[28]  Other Tenth Circuit ADEA cases frame this last element more broadly, requiring the plaintiff to show "she was treated less favorably than others not in the protected class."[29]  Under either standard, Plaintiff cannot make out a prima facie case of age discrimination.

Plaintiff has simply provided no evidence that, after her termination, her position was filled by a younger person.  Nor has she provided evidence that she was treated less favorably than a younger employee.  In the context of this case, she might do so by presenting evidence that a younger employee used profanity on an open line but was not fired by Defendant.[30]  She attempts to do this by discussing a man named Bryce who was reportedly not terminated after using profanity.  But crucially, Plaintiff herself professes ignorance as to almost all relevant details that would permit the Court to infer she was treated less favorably than Bryce.  She does not testify as to Bryce's age, does not know whether Bryce was disciplined for using profanity, whether he was on a call with a customer when he used profanity, whether a customer was on the line, and whether he was on hold.  Plaintiff was terminated, not for simply using profanity, but for doing so while on an open line with a customer.  Given this dearth of details as to Bryce's age and use of profanity, the Court cannot conclude Plaintiff was treated less favorably than a younger employee who used profanity on an open line.  Because Plaintiff lacks sufficient evidence as to her prima facie case of

---

[28] *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056 (10th Cir. 2020) (quoting *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008)).

[29] *Jones*, 617 F.3d at 1279.

[30] *See Barnes v. Occidental Petroleum Corp.*, 761 F. Supp. 2d 1285, 1292 (N.D. Okla. 2010) ("Because Plaintiff does not know Brian's age or what action OPC took following his alleged workplace outburst, this incident is insufficient to show that Plaintiff was somehow treated less favorably than younger employees who made inappropriate workplace comments.").

age discrimination under the ADEA, the Court must grant summary judgment in favor of Defendant as to that claim.

## C.    Retaliation under the ADEA

"A prima facie case of retaliation requires the plaintiff to show that (1) he or she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action."[31]   Defendant challenges only the third element in its Motion.

Plaintiff may establish a causal connection by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."[32] But only if the temporal proximity between the two is very close may the plaintiff rely solely on that evidence to establish the requisite causal connection.[33]  The Tenth Circuit has held that a three-month period between the protected conduct and the adverse action is, by itself, insufficient to establish causation.[34]  Further, evidence of temporal proximity "has minimal probative value in a retaliation case where intervening events between the employee's protected conduct and the challenged employment action provide a legitimate basis for the employer's action."[35]

---

[31] *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202 (10th Cir. 2008).

[32] *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (quoting *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982)).

[33] *Id.* (citing *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997)).

[34] *Id.* (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)).

[35] *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1001-02 (10th Cir. 2011) (citation omitted); *see also Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005) ("[E]vidence of intervening events . . . tend[s] to undermine any inference of retaliatory motive and weaken the causal link.").

Plaintiff's retaliation claim suffers from two problems.  First, her protected activity—her complaint to Faidley about Hartle's alleged age-based comments—occurred three months prior to her termination.  Thus, Plaintiff cannot rely solely on temporal proximity to establish the requisite causal connection.  She offers little else to do so, instead satisfied that because "before and after the decision to terminate was made, Erron expressed the opinion that the action was retaliatory in nature," the causal connection is clear.  The Court disagrees.  Plaintiff cannot meet her burden simply by pointing to her own belief that the termination was retaliatory.

Second, several intervening events blunt the edge of any causal inference that can be gleaned from the temporal proximity between Plaintiff's complaint and her termination.  Plaintiff was promoted by Hartle *after* her complaint about the alleged age-based comments.  This is inconsistent with a retaliatory motive.  Further, Plaintiff's use of profanity on an open line with a customer provides a legitimate basis for her termination and is far closer in time than her complaint against Hartle.

Ultimately, Plaintiff brings forward insufficient evidence of a causal connection between her complaint regarding Hartle's alleged age-based comments and her termination three months later.  This is an essential element of Plaintiff's prima facie case of retaliation under the ADEA, and its absence requires the Court to grant summary judgment in favor of Defendant on this claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 25) is **GRANTED.**

**IT IS SO ORDERED.**

This case is now closed.

Dated this 13th day of September, 2022.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE